UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
KATRINA QUEEN, et al.,                  )
                                        )
          Plaintiffs,                   )
                                        )
     v.                                 )     Civil Action No. 10-2017 (PLF)
                                        )
JANET SCHMIDT, et al.,                  )
                                        )
          Defendants.                   )
_____ )
                                        )
KATRINA QUEEN, et al.,                  )
                                        )
          Plaintiffs,                   )
                                        )
     v.                                 )     Civil Action No. 11-2117 (PLF)
                                        )
JANET SCHMIDT,                          )
                                        )
          Defendant.                    )
_____ )


OPINION

          These two related cases arise from disputes surrounding the amendment and

administration of the Elberta Douglass Living Trust, which was established by Ms. Douglass

before her death in January 2010.  Two of the plaintiffs claim to be its trustees and the third

claims to be its successor trustee, and together they contend that defendant Janet Schmidt

wrongfully removed them from these positions in an exercise of her purported authority as "trust

protector."  The other two defendants, Mark Cera and Bonnie Miller, were named by Ms.

Schmidt as trustees in the plaintiffs' stead.  These civil actions, both originally filed in the

Superior Court of the District of Columbia, rest on nearly identical allegations of wrongdoing,

including claims that Ms. Schmidt engaged in the unauthorized practice of law, violated her professional ethical obligations, and breached fiduciary duties. The plaintiffs seek damages from Ms. Schmidt as well as from defendants Cera and Miller, and they also seek an order from this Court that would reinstate them as trustees and remove Ms. Schmidt as the purported trust protector.

This Opinion will refer to Civil Action No. 10-2017 as "Queen I," and to Civil Action No. 11-2117 as "Queen II." Currently pending before the Court are a number of motions filed in Queen II. That action has been stayed, however, pending resolution of jurisdictional issues raised in Queen I and on which the parties were ordered to submit supplemental briefing: (1) whether the "probate exception" to federal jurisdiction warrants remand to the D.C. Superior Court, and (2) whether the defendants have been properly served with process. Several additional issues also have been raised in Queen I, including whether complete diversity exists between the parties, another necessary predicate for the Court's exercise of jurisdiction over the matter. Finally, the plaintiffs and Ms. Schmidt dispute whether Queen II, which purports to stem from a "third-party complaint," was properly removed to this Court.

After careful consideration of the parties' arguments and the entire record in these cases, the Court reaches the following conclusions. First, the Court rejects the plaintiffs' contention that Queen I must be remanded either under the probate exception or due to a lack of complete diversity between the parties. Second, the Court finds that plaintiffs' service upon defendant Janet Schmidt in Queen I was defective, and, accordingly, it will grant the plaintiffs a further 120 days within which to effect service. Third, and still with respect to Queen I, the Court concludes that it may exercise personal jurisdiction over defendants Mark Cera and Bonnie Miller and that those defendants were properly served, but that, to the extent the

plaintiffs seek to hold Cera and Miller liable for any tortious conduct, the plaintiffs fail to state a

claim for relief against those two defendants, although the Court will dismiss one of the

plaintiffs' claims without prejudice.  In addition, because the plaintiffs seek a court order that

would require Cera and Miller to step down as trustees, the Court further concludes that these

defendants are necessary parties who should not be dismissed from the case.  Finally, as for

<u>Queen II</u>, that action will be remanded to the Superior Court of the District of Columbia because

Ms. Schmidt — as an additional counterclaim defendant — was not entitled to remove the action

from that court to this one.

## I.  BACKGROUND

Plaintiffs Katrina Queen and Kitt Haston allege that on November 28, 2009, they

were present at the home of the decedent, Elberta Douglass, when defendant Janet Schmidt

arrived and claimed to be Ms. Douglass' attorney.  <u>Queen I</u> Compl. ¶ 10 [Dkt. No. 1-1 in

<u>Queen I</u>].[1]  Queen and Haston informed Schmidt that Ms. Douglass was recovering from a recent

head injury and "had been going in and out of consciousness."  <u>Id</u>.  Schmidt nevertheless entered

Douglass' bedroom to discuss legal work that Schmidt had been performing for her.  <u>Id</u>.  Before

leaving, Schmidt discussed with Queen and Haston the possibility of their becoming attorneys-

---

[1]     Kitt Haston was Elberta Douglass' daughter.  <u>See</u> Trust Section 7.01 [Dkt. No. 1-1 in <u>Queen I</u>].  Ms. Haston passed away on January 25, 2013.  <u>See</u> Suggestion of Death [Dkt. No. 26 in <u>Queen II</u>].  Katrina Queen is Elberta Douglass' granddaughter, <u>see</u> Trust Section 7.01, and William Queen — who is a plaintiff in this action in his capacity as an alleged successor trustee to the Trust — is Ms. Queen's husband.  <u>See</u> Schmidt Opp. to TRO and PI, Ex. 5 [Dkt. No. 9-1] (Florida state court complaint) ¶¶ 7-10.

Because Ms. Haston has died, she no longer may be a plaintiff to this action, but the case will proceed as to the remaining parties.  <u>See</u> FED. R. CIV. P. 25(a)(2).  Whether any claim personal to Ms. Haston survives her death and which may be pursued by a substitute party, <u>see</u> FED. R. CIV. P. 25(a)(1), is an issue that the Court need not address at this time.

in-fact for Ms. Douglass.  One week later, Queen and Haston traveled with Ms. Douglass to

Schmidt's office in Virginia, where Ms. Douglass met privately with Schmidt for two hours.  Id.

¶ 11.  After their meeting, Schmidt directed Queen and Haston to sign power-of-attorney

documents, which they did.  In addition, Schmidt informed the plaintiffs about a trust instrument

that she had drafted for Ms. Douglass.  According to the plaintiffs, this instrument actually

consisted of an amendment to a trust instrument that Douglass had established more than two

years earlier, which had been drafted by a different attorney.  Id. ¶ 12.  The new trust instrument

bore two major differences from its predecessor:  it purported to be governed by Florida rather

than District of Columbia law, id. ¶ 14, and it named Schmidt as "trust protector," which

empowered her to "collect fees and control the operation of the trust," among other rights.  Id.

¶¶ 12, 15, 35-36; see Trust Section 3.10.  Under the terms of the Trust, Katrina Queen and Kitt

Haston would become its trustees upon Ms. Douglass' death, and William Queen was named as

the successor trustee to Ms. Queen and Ms. Haston.  Trust Section 3.03(a).

      Elberta Douglass died on January 18, 2010.  Queen I Compl. ¶ 16.  According to

the plaintiffs, Ms. Douglass left a will that had been drafted by Schmidt and which named

Katrina Queen as Personal Representative of Douglass' Estate.  Id. ¶¶ 16-17.  But it was not until

several months after Ms. Douglass' death that the plaintiffs actually learned of the existence of

the will, after the plaintiffs had engaged counsel and their counsel had communicated with

Schmidt regarding the Estate.  See id. ¶¶ 16-17, 27; id. ¶ 44 ("It was only after the Plaintiffs

engaged an attorney that [Schmidt] relented and gave them the Will.").  The plaintiffs allege that

between February and March of 2010, Schmidt tried to pressure them to keep rather than sell a

piece of real property belonging to the Estate.  See id. ¶¶ 19, 23-24.  According to the plaintiffs,

Schmidt threatened to remove Queen and Haston as trustees if they were to sell the property

belonging to the Estate, which at that time was being used to earn rental income.  Id. ¶ 42.

Despite Schmidt's admonition, the plaintiffs sold the property.  Queen I Compl.

¶ 27.  Soon thereafter, Ms. Schmidt exercised her newfound powers as trust protector and, in a

letter dated October 27, 2010, informed Queen and Haston that she was removing them as

trustees and replacing them with Mark Cera and Bonnie Miller, two Certified Public Accountants

based in Florida.  Id. ¶¶ 28, 43.  Schmidt apparently also purported to remove William Queen as

successor trustee.  See id. ¶ 47.  The following day, Schmidt then purported to change the situs

of the trust from the District of Columbia to Florida.  Id. ¶ 29.[2]  And on November 2, 2010, Cera,

Miller, and Schmidt filed an action in Florida state court, seeking a declaration that Schmidt

validly occupies the role of trust protector and that her decision to remove the plaintiffs as

trustees and to replace them with Cera and Miller was a legitimate exercise of her authority.  Id.;

see Schmidt Opp. to TRO and PI, Ex. 5.

The plaintiffs then filed Queen I in the Superior Court of the District of Columbia,

Probate Division, on November 19, 2010.  Their complaint includes counts alleging (1) that Ms.

Schmidt engaged in the unauthorized practice of law in the District of Columbia; (2) that

Schmidt violated her ethical duties as a lawyer by drafting the trust protector provisions of Ms.

Douglass' Trust, which named Schmidt herself as trust protector; and (3) that Schmidt violated

her fiduciary duties by removing the plaintiffs from their positions as trustees and successor

trustee.  Queen I Compl. ¶¶ 29-48.  The plaintiffs also included a claim for a court order that

would reinstate the plaintiffs in their trusteeships and remove Mr. Cera and Ms. Miller as

purported trustees, and which also would declare invalid the trust protector provisions of the

---

[2]      The complaint contains two paragraph 29s.  The Court here cites the first-
appearing paragraph 29, and, in the succeeding paragraph of this page of the Opinion, it cites the
second-appearing paragraph 29.

Trust.  See id. ¶¶ 47, 53.  Finally, the complaint includes a paragraph under "Count IV: Damages," in which the plaintiffs allege that Schmidt, Cera, and Miller "engag[ed] in a plan to extract funds and/or property from the Trust when they lacked authorization to do so," and that the defendants violated fiduciary duties owed to the plaintiffs "in order to reap fees and . . . to loot the Trust and the estate of property."  Id. ¶ 51.

        Five days after the plaintiffs had filed their complaint, Schmidt removed the case to this Court.  The plaintiffs promptly sought a temporary restraining order to prevent the defendants from taking any actions to administer the trust.  Shortly thereafter, defendants Cera and Miller filed motions to dismiss, arguing that they had been served with defunct state court summonses and, therefore, this Court lacked personal jurisdiction over them.  Cera and Miller also argued for dismissal on a number of other grounds, including lack of standing, failure to state a claim, lack of personal jurisdiction under the District of Columbia's long-arm statute, and improper venue.[3]  Defendant Janet Schmidt then filed a motion to quash service of process, arguing that the plaintiffs had served her in a courtroom of the D.C. Superior Court in violation of a rule providing immunity from service in those circumstances.  Soon after the parties had briefed Ms. Schmidt's motion to quash service, the plaintiffs filed a motion seeking remand to the Superior Court.  The Court granted the plaintiffs' motion to remand.  Queen v. Schmidt, Civil Action No. 10-2017 (RMU), 2011 WL 4101117 (D.D.C. Sept. 14, 2011).  But then, upon the defendants' motions, the Court stayed its remand order to allow the parties to file supplemental memoranda regarding whether federal jurisdiction existed over the matter, as well as regarding the defendants' challenges to personal service.  See Minute Order (Sept. 30, 2011).

---

[3]        Defendant Lee Harris Capital Management, Inc. was voluntarily dismissed by the plaintiffs around this same time.  See Notice of Dismissal [Dkt. No. 17 in Queen I].

Meanwhile, Cera and Miller — acting in their capacity as the purported trustees of the Trust — filed a new action on March 25, 2011 in the Probate Division of the Superior Court of the District of Columbia (Queen II), seeking to have Ms. Queen removed as personal representative of the Estate of Elberta Douglass for various alleged misdeeds.  On November 16, 2011, Katrina Queen, Haston, and William Queen filed a "Third-Party Complaint" in that action, which was virtually identical to their complaint in Queen I.  This Third-Party Complaint named Janet Schmidt as the sole defendant, thus pulling her into the Superior Court action filed by Cera and Miller.  Ms. Schmidt filed a notice of removal in this Court.  Predictably, Queen, Haston, and Queen filed a motion to remand the case to the Superior Court.  Ms. Schmidt opposed the remand motion, and also filed her own motion to dismiss and to quash service.

Both cases then were transferred to the undersigned from Judge Urbina, whereupon Queen II was stayed pending resolution of the jurisdictional issues addressed in the parties' supplemental briefing filed in Queen I.  See Queen v. Schmidt, Civil Action Nos. 10-2017 (PLF), 11-2117 (PLF), 2012 WL 2226433 (D.D.C. June 15, 2012).  In the present Opinion, the Court first will address the numerous issues pending in Queen I, and then will turn to those pending in Queen II.  These issues, presented in the order of the Court's analysis, are as follows:  (1) whether the Court should remand Queen I to the Superior Court either due to a lack of complete diversity or under the probate exception to federal jurisdiction; (2) whether the Court may exercise personal jurisdiction over the defendants in Queen I; (3) if so, whether defendants Cera and Miller should be dismissed because the plaintiffs have failed to state a claim against them; and (4) whether Queen II should be remanded either for lack of diversity jurisdiction or under the probate exception, or because Janet Schmidt was not entitled to remove that case in the first place due to her purported status as a third-party defendant in the action.

## II. QUEEN I[4]

The plaintiffs challenge this Court's subject matter jurisdiction over Queen I, while the defendants argue that this Court lacks personal jurisdiction over them.  "[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits."  NetCoalition v. SEC, 715 F.3d 342, 347 (D.C. Cir. 2013) (quoting Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 431 (2007)) (internal quotation omitted, alteration in original).  Because the plaintiffs' jurisdictional objections implicate whether Queen I should remain in this Court or be returned to the Superior Court, resolution of this issue takes logical precedence over the defendants' objections based on personal jurisdiction.[5]

---

[4]        The papers considered in connection with the issues pending in Queen I include: plaintiffs' complaint ("Queen I Compl.") [Dkt. No. 1-1]; notice of removal [Dkt. No. 1]; plaintiffs' supplemental motion for TRO and PI [Dkt. No. 8]; Schmidt's opposition to supplemental motion for TRO and PI ("Schmidt Opp. to TRO and PI") [Dkt. No. 9]; Cera's opposition to supplemental motion for TRO and PI [Dkt. No. 14]; Miller's opposition to supplemental motion for TRO and PI [Dkt. No. 15]; plaintiffs' reply to Cera's and Miller's oppositions to TRO and PI [Dkt. No. 11]; plaintiffs' reply to Schmidt's opposition to TRO and PI [Dkt. No. 12]; Miller's motion to dismiss ("Miller MTD") [Dkt. No. 18]; Cera's motion to dismiss ("Cera MTD") [Dkt. No. 19]; plaintiffs' opposition to Miller's and Cera's motions to dismiss ("Pls.' Opp. to Cera MTD") [Dkt. No. 21]; Miller's reply to plaintiffs' opposition to motion to dismiss ("Miller MTD Reply") [Dkt. No. 25]; Cera's reply to plaintiffs' opposition to motion to dismiss "(Cera MTD Reply") [Dkt. No. 27]; Schmidt's motion to quash service ("Schmidt Mot. to Quash") [Dkt. No. 29]; plaintiffs' opposition to Schmidt's motion to quash ("Pls.' Opp. to Mot. to Quash") [Dkt. No. 31]; Schmidt's reply to opposition to motion to quash ("Schmidt Quash Reply") [Dkt. No. 35]; plaintiffs' motion to remand ("Mot. to Remand") [Dkt. No. 36]; Schmidt's request for sanctions ("Schmidt Sanctions Request") [Dkt. No. 37]; plaintiffs' opposition to request for sanctions [Dkt. No. 39]; Schmidt's motion to stay remand order ("Schmidt Mot. to Stay Remand") [Dkt. No. 42]; Miller's motion to stay remand order ("Miller Mot. to Stay Remand") [Dkt. No. 43]; Cera's motion to stay remand order [Dkt. No. 44]; Schmidt's supplemental memorandum ("Schmidt Supp. Memo.") [Dkt. No. 45]; Miller's supplemental memorandum ("Miller Supp. Memo.") [Dkt. No. 46]; Cera's supplemental memorandum ("Cera Supp. Memo.") [Dkt. No. 47]; plaintiffs' supplemental memorandum ("Pls.' Supp. Memo.") [Dkt. No. 50]; Miller's supplemental reply ("Miller Supp. Reply") [Dkt. No. 51]; Cera's supplemental reply ("Cera Supp. Reply") [Dkt. No. 52]; and Schmidt's supplemental reply ("Schmidt Supp. Reply") [Dkt. No. 53].

[5]        The defendants contend that it would be improper for this Court to remand without first resolving the personal jurisdiction issues, arguing that by ordering remand the Court

### A.  Subject Matter Jurisdiction

### 1.  Is There Complete Diversity Between the Parties?

The face of the complaint in <u>Queen I</u> lists the plaintiffs as being residents of both Maryland and the District of Columbia.  <u>Queen I</u> Compl. ¶¶ 2-4.  The defendants, though named as individuals, are identified according to their respective principal places of business, which include Virginia and Florida.  <u>Id.</u> ¶¶ 5-7.  Nonetheless, all three defendants have averred in sworn statements that they are domiciled in the same state where they work.  <u>See</u> Affidavit of Janet L. Schmidt (Apr. 25, 2011) [Dkt. No. 45-1] (Virginia); Sworn Declaration of Bonnie Miller (filed Dec. 21, 2010) [Dkt. No. 18] (Florida); Sworn Declaration of Mark Cera (filed Dec. 21, 2010) [Dkt. No. 19] (Florida).  Complete diversity therefore exists on the face of the plaintiffs' complaint, and the plaintiffs seek damages in excess of $75,000, satisfying the amount in controversy requirement.  <u>See</u> <u>Queen I</u> Compl. ¶ 50.  But after Ms. Schmidt moved to quash the plaintiffs' service upon her based on a purported immunity deriving from her Virginia citizenship, the plaintiffs raised an allegation that Schmidt was, in fact, a citizen of the District of Columbia.  Pls.' Opp. to Mot. to Quash at 1-3.  The plaintiffs then moved to remand the case to the Superior Court, relying in part on the argument that complete diversity was lacking for this reason.  <u>See</u> Mot. to Remand at 1-2.

The plaintiffs' contention that Ms. Schmidt actually is domiciled in the District of Columbia, rather than in Virginia, is based on four pieces of evidence.  First is an affidavit from

---

would be asserting jurisdiction over them in violation of their due process rights.  <u>See</u> Schmidt Mot. to Stay Remand at 6-10; Miller Mot. to Stay Remand at 3-5; Schmidt Supp. Memo. at 18-19.  This argument is misconceived; declining to exercise subject matter jurisdiction over a case is not equivalent to the exercise of personal jurisdiction over the parties to the case.  <u>See</u> <u>Ruhrgas AG v. Marathon Oil Co.</u>, 526 U.S. 574, 587-88 (1999) (recognizing court's discretion to decide remand issue prior to addressing challenges to personal jurisdiction).  Moreover, even after a remand, the defendants would be entitled to assert their personal jurisdiction defenses in the Superior Court.

the plaintiffs' process server, who avers that he attempted to serve Ms. Schmidt at an address in the District and was told by neighbors as well as by the person who answered the door that Schmidt lived there but was not then at home.  Affidavit of Ambiko Guice (Mar. 29, 2011) [Dkt. No. 32-1]; Pls.' Opp. to Mot. to Quash at 2.  The plaintiffs also proffer a deed indicating Schmidt's ownership of the D.C. property in question.  See Deed to 14 4th Street, NE [Dkt. No. 32-1].  Ms. Schmidt has conceded being an owner of the property, but she contends she does not live there.  See Schimdt Quash Reply at 8.  Finally, the plaintiffs submit documents purporting to demonstrate that Ms. Schmidt provided the D.C. address to the U.S. Postal Service when she opened a post office box in Alexandria, Virginia, as well as that Schmidt has two cars registered to that address.  Pls.' Opp. to Mot. to Quash, Ex. A.

Ms. Schmidt argues that none of these evidentiary proffers can support a finding that she is a citizen of the District of Columbia.  Schmidt Quash Reply at 1-13; Schmidt Supp. Memo. at 6-17.  The Court agrees.  Although the plaintiffs have submitted a deed in Schmidt's name indicating her ownership of a D.C. home, ownership does not equal domicile.  And Ms. Schmidt has averred in an affidavit that she is domiciled in Alexandria, Virginia.  See Affidavit of Janet L. Schmidt ¶¶ 1-30.  In addition, Ms. Schmidt has submitted affidavits from two other individuals — her attorney, and her landlord — who attest, on the basis of personal knowledge, that Schmidt in fact lives in Alexandria.  See Affidavit of John S. Lopatto III (Apr. 22, 2011) [Dkt. No. 45-1]; Affidavit of John R. Fernstrom (Apr. 22, 2011) [Dkt. No. 45-1].  The affidavit from the plaintiffs' process server contains statements attributed to unidentified neighbors and an unidentified person who answered the door to the property, reporting that Schmidt lived at the address in the District of Columbia.  These hearsay statements, even if they might properly be considered by the Court, see Robinson Engineering Co. Pension Plan & Trust v. George, 223

F.3d 445, 451-52 (7th Cir. 2000), bear little evidentiary value in light of Ms. Schmidt's own sworn statement attesting to her Virginia citizenship, which is complemented by the affidavits of Mr. Lopatto and Mr. Fernstrom.

Further, the document submitted by the plaintiffs purporting to be a record from the District of Columbia's Department of Motor Vehicles is on its face inauthentic.  This document appears to have been produced by some sort of private investigatory firm hired by Capitol Process Services, the company employed by the plaintiffs to serve Ms. Schmidt.  See Pls.' Opp. to Mot. to Quash, Ex. A.  The document itself even states that its data source is "Non-Governmental."  Id.  The Court will not credit this purported evidence.  And finally, with respect to the change-of-address information request form, Ms. Schmidt has persuasively explained why this document lacks indicia of its having actually been completed by a representative of the U.S. Postal Service.  See Schmidt Supp. Memo. at 9-11.  In particular, the document lacks a postmark stamp, an element of authentication that the U.S. Postal Service includes on its own suggested format for such change-of-address information request forms.  See 39 C.F.R. § 265.6; see also FED. R. EVID. 902(1) (signed and sealed domestic public documents are self-authenticating).  The plaintiffs strikingly fail to respond to Ms. Schmidt's arguments on any of these points.  See Pls.' Supp. Memo. at 3-4.  The plaintiffs therefore have provided no reason to dissuade the Court from determining that Ms. Schmidt is domiciled precisely where the plaintiffs' complaint asserts:  in Virginia.

Complete diversity being present and the amount in controversy being satisfied, the Court concludes that its diversity jurisdiction was properly invoked.  Moreover, as the plaintiffs appear to have willfully misrepresented to the Court the nature and source of the purported DMV record and, potentially, the change-of-address form as well, the Court will order

11

plaintiffs' counsel to show cause why he should not be sanctioned for this conduct under Rule 11

of the Federal Rules of Civil Procedure or pursuant to the Court's inherent authority.[6]

### 2.  Does the Probate Exception to Federal Jurisdiction Apply?

The plaintiffs contend that Queen I falls within the probate exception to federal

jurisdiction, and that the Court therefore must remand the case to the Superior Court of the

District of Columbia.  "[T]he probate exception reserves to state probate courts the probate or

annulment of a will and the administration of a decedent's estate [and] also precludes federal

courts from endeavoring to dispose of property that is in the custody of a state probate court."

Marshall v. Marshall, 547 U.S. 293, 311-12 (2006).  It is a "narrow exception."  Id. at 305;

see also Lewis v. Parker, Civil Action No. 14-163 (BAH), 2014 WL 4460279, at *1 n.2 (D.D.C.

Sept. 10, 2014) (the Supreme Court in Marshall made clear that the probate exception is

"distinctly limited [in] scope") (quoting Marshall v. Marshall, 547 U.S. at 310) (alteration in

original).  For the reasons explained below, the Court concludes that the probate exception is

inapplicable in the present case, and that a remand therefore is not warranted.[7]

The plaintiffs argue that "[t]his case involves the administration of a decedent's

estate because it involves the identity of the administrators who are to conduct the disposition of

---

[6]     In a related vein, the Court takes note of Ms. Schmidt's request for sanctions against plaintiffs' counsel based on counsel's alleged misrepresentations in his certificate of service accompanying the motion to remand.  See Schmidt Sanctions Request; see also Miller MTD Reply at 1 (accusing plaintiffs' counsel of filing a "false certificate of service").  The Court will defer ruling on Schmidt's request for the present time.

[7]     The Court recognizes that Judge Urbina reached a contrary conclusion in his original order remanding this case to the Superior Court.  See Queen v. Schmidt, 2011 WL 4101117, at *2.  But Judge Urbina's ruling was based primarily on the defendants' failure to offer any persuasive arguments in opposition to the plaintiffs' motion to remand, as well as due to "factual ambiguities . . . [that] weigh[ed] in favor of remand."  Id. at *2.  Now, with the benefit of having reviewed the parties' supplemental memoranda on this issue, the Court concludes that it has jurisdiction over the matter.

the Decedent's property through a[] revocable trust executed by the Decedent before her death." Pls.' Supp. Memo. at 5.  They further maintain that "[t]he Trust's administration is inextricably intertwined with the Estate of which the Trust is the beneficiary," and that the Estate of Elberta Douglass — which is (or was) being administered in the Probate Division of the Superior Court — "cannot distribute its assets until the Trustees of the Trust are identified."  Id. at 7.  These statements indicate precisely why the probate exception does not divest this Court of jurisdiction; at issue in this case is the Elberta Douglass *Living Trust*, not Ms. Douglass' Estate.  Even crediting the plaintiffs' assertion that the Estate cannot distribute its assets until the issues raised in this case have been resolved, "[a] case does not fall under the probate exception if it merely impacts a state court's performance of one of [its probate] tasks."  Lee Graham Shopping Center, LLC v. Estate of Kirsch, 777 F.3d 678, 681 (4th Cir. 2015).

The plaintiffs also argue that their claims, had they remained in the Superior Court, could only have been heard in the Probate Division of that court rather than in its Civil Division because only the Probate Division's rules pertain to the duties of trustees.  See Pls.' Supp. Memo. at 5-6, 9.  The Supreme Court, however, rejected this very argument in Marshall v. Marshall, where it noted that it has previously "held that the jurisdiction of the federal courts, 'having existed from the beginning of the Federal government, [can]not be impaired by subsequent state legislation creating courts of probate.'"  Marshall v. Marshall, 547 U.S. at 314 (quoting McClellan v. Carland, 217 U.S. 268, 281 (1910)).  Consequently, the D.C. Superior Court's allocation of a particular category of jurisdiction to its Probate Division has no bearing on the scope of this Court's own jurisdiction.

Finally, the plaintiffs argue that because trusts often are employed as "will substitutes," the probate exception should apply here.  See Pls.' Supp. Memo. at 6-7.  This Court

is not persuaded.  The Supreme Court has made it quite clear that a federal court lacks jurisdiction under the probate exception only where a matter calls for the court to probate or annul a will, administer a decedent's estate, or dispose of property within the custody of a state probate court.  See Marshall v. Marshall, 547 U.S. at 311-12; see also Lee Graham Shopping Center, LLC v. Estate of Kirsch, 777 F.3d at 681.  A dispute over a trust — even a trust used as a substitute for a will or in tandem with a will — does not implicate any of these judicial tasks. See Oliver v. Hines, 943 F. Supp. 2d 634, 639 (E.D. Va. 2013) ("Although an *inter vivos* trust may, on occasion, serve as the functional equivalent of a will, there is no warrant for expanding the probate exception to cover such trusts, given that the Supreme Court [in Marshall v. Marshall] specifically cautioned against any judicial expansion of the exception.") (footnote omitted); see also In re Janecek, No. CV-13-287-LRS, 2014 WL 839998, at *3 (E.D. Wash. Mar. 4, 2014) ("Once the assets are 'poured over[]' [from the will into the trusts,] they will no longer be estate assets in custody of the state court. . . .  [This court's] orders will only impact the assets after they have been 'poured over' into the trusts.").[8]

Because this case does not call for this Court to probate or annul a will nor to administer a decedent's estate, and as the case does not involve property that is in the custody of the Probate Division of the Superior Court, the probate exception does not bar this Court's assertion of jurisdiction over the matter.  Accordingly, the Court rejects the plaintiffs' request to remand Queen I to the Superior Court of the District of Columbia.

---

[8]    Of course, if a state court were to be exercising *in rem* jurisdiction over a trust *res*, then a federal court might be precluded from exercising jurisdiction over the same trust.  See Marshall v. Marshall, 547 U.S. at 311 (recognizing "the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*").  The plaintiffs do not argue, however, that the Probate Division of the Superior Court now has jurisdiction over property presently contained within Ms. Douglass' Trust.

### B.  Personal Jurisdiction

All three defendants raise personal jurisdiction defenses and urge dismissal under Rules 12(b)(2), 12(b)(4), and 12(b)(5) of the Federal Rules of Civil Procedure.  "A defendant does not waive objections to personal jurisdiction or service of process by removing the action to a federal court . . . ."  4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIVIL § 1082, at 428 (3d ed. 2002); see also Cantor Fitzgerald, L.P v. Peaslee, 88 F.3d 152, 157 n.4 (2d Cir. 1996) ("Removal does not waive any Rule 12(b) defenses.").  The Court first will address Ms. Schmidt's challenge to personal service, and then will consider the arguments offered jointly by Mr. Cera and Ms. Miller.

### 1.  Janet Schmidt

Ms. Schmidt contends that the plaintiffs served her with process in the rear of Courtroom 415 of the D.C. Superior Court at the H. Carl Moultrie Courthouse, where, according to Schmidt, she was voluntarily present to participate in a proceeding in which she was the plaintiff.  Schmidt Mot. to Quash at 1; Schmidt Supp. Memo. at 3-4.  Ms. Schmidt therefore invokes the rule endorsed by the United States Supreme Court in Stewart v. Ramsay, 242 U.S. 128, 129 (1916), holding that "suitors, as well as witnesses, coming from another state or jurisdiction, are exempt from the service of civil process while in attendance upon court, and during a reasonable time in coming and going."  See also Godfrey v. Iverson, Civil Action No. 05-2044, 2007 WL 1748706, at *1 (D.D.C. June 15, 2007).

The plaintiffs offer two responses.  First, they assert that Ms. Schmidt actually is a citizen of the District of Columbia and therefore is unable to invoke the exemption from service.  See Pls.' Opp. to Mot. to Quash at 1-2; Pls.' Supp. Memo at 3-4.  As explained supra at 9-11, however, the plaintiffs do not support this contention with any credible evidence.  Second, the

plaintiffs maintain that Ms. Schmidt's attendance at the Superior Court "was not voluntary due to the various penalties that would have been exacted upon her had she not attended the proceeding."  Pls.' Opp. to Mot. to Quash at 3; see also Pls.' Supp. Memo. at 3-4.  The plaintiffs offer absolutely no explanation to back up this conclusory assertion, let alone any evidentiary support for it.  The Court therefore concludes that the plaintiffs' service upon Ms. Schmidt was ineffective, as, at the time of service, she enjoyed the exemption established by the Supreme Court in Stewart v. Ramsay.

Ms. Schmidt argues that she should be dismissed from the case pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, as the plaintiffs did not obtain a new summons and serve it upon her within 120 days of their being "notified of [the] ineffective service" by way of Schmidt's motion to quash.  See Schmidt Supp. Memo. at 18.  Of course, the question regarding the validity of service is only now being resolved in her favor; the plaintiffs cannot be faulted for not serving her anew prior to this Court's resolution of this question.  Accordingly, although the Court recognizes the long period of time that has since elapsed, it determines that the plaintiffs should be afforded a new opportunity to properly serve Ms. Schmidt with process.  If the Court were instead to dismiss the plaintiffs' complaint against Schmidt — even without prejudice — it is likely that they would be time-barred from re-filing the complaint.  See Ciralsky v. C.I.A., 355 F.3d 661, 672 (D.C. Cir. 2004) (noting that "when a suit is dismissed without prejudice, the statute of limitations is deemed unaffected by the filing of the suit, so that if the statute of limitations has run the dismissal is effectively with prejudice") (quoting Elmore v. Henderson, 227 F.3d 1009, 1011 (7th Cir. 2000)); see also Brennan v. Kulick, 407 F.3d 603, 606 (3d Cir. 2005).  The plaintiffs therefore will be allowed an additional 120 days within which to serve Ms.

Schmidt.  Should they fail to do so within that time period, their complaint against Schmidt will be subject to dismissal.  See FED. R. CIV. P. 4(m).

### 2.  Mark Cera and Bonnie Miller

The plaintiffs set forth three claims that pertain to defendants Cera and Miller. First, the plaintiffs want the Court to declare that the plaintiffs — rather than Cera and Miller — are the rightful trustees of the Trust.  See Queen I Compl. ¶ 47.  Second, they accuse Cera and Miller of "engaging in a plan [with Schmidt] to extract funds and/or property from the Trust," and third, they accuse them of "violating their fiduciary duties to the Plaintiffs not to interfere with the Plaintiffs as Trustees in administering the Trust and the decedent's estate."  Id. ¶ 51. Mr. Cera and Ms. Miller jointly argue, however, that this Court may not exercise personal jurisdiction over them for two reasons.[9]  They first contend that the plaintiffs have failed to satisfy the requirements for personal jurisdiction over nonresident defendants set forth in the District of Columbia's long-arm statute, given that both Cera and Miller are located in Florida. Cera MTD at 8-11.  In addition, they argue that service of process upon them was invalid because the plaintiffs served them with summonses that had been issued by the D.C. Superior Court prior to removal, rather than obtaining new summonses from this Court after removal and then serving the defendants with those summonses.  Id. at 11-13.

### a.  Statutory and Constitutional Bases for Asserting Personal Jurisdiction

The plaintiffs bear the burden of establishing a *prima facie* showing that the Court has personal jurisdiction over Cera and Miller.  See Mwani v. Bin Laden, 417 F.3d 1, 7 (D.C.

_____

[9]      Ms. Miller joins Mr. Cera's arguments for dismissal in full.  See Miller MTD at 1. In addition, Miller's supplemental memorandum is substantively identical to that of Cera and she joins in the supplemental replies of both Cera and Schmidt.  See Miller Supp. Reply at 2. Accordingly, the Court does not directly cite any of Ms. Miller's submissions.

Cir. 2005); First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1378-79 (D.C. Cir. 1988). In order to meet this burden, plaintiffs "must provide sufficient factual allegations, apart from mere conclusory assertions, to support the exercise of personal jurisdiction over the defendant." Howe v. Embassy of Italy, Civil Action No. 13-1273 (BAH), 2014 WL 4449697, at *2 (D.D.C. Sept. 11, 2014); see also First Chicago Int'l v. United Exch. Co., 836 F.2d at 1378 ("Conclusory statements . . . [do] not constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction . . . .") (alteration in original); Alkanani v. Aegis Def. Servs., 976 F. Supp. 2d 13, 22 (D.D.C. 2014) (plaintiff has the burden of establishing a factual basis for a court's exercise of personal jurisdiction and for alleging facts connecting defendant with the forum). On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Court need not accept all of the plaintiffs' allegations as true. Jung v. Ass'n of American Medical Colleges., 300 F. Supp. 2d 119, 127 (D.D.C. 2004). It "may receive and weigh affidavits and other relevant matter [outside of the pleadings] to assist in determining the jurisdictional facts." Id. (quoting United States v. Philip Morris Inc., 116 F. Supp. 2d. 116, 120 n.4 (D.D.C. 2000)); see also Alkanani v. Aegis Def. Servs., 976 F. Supp. 2d at 22. But all factual discrepancies must be resolved in the plaintiffs' favor. Crane v. N.Y. Zoological Soc., 894 F.2d 454, 456 (D.C. Cir. 1990).

   To begin with, there can be no plausible argument — and the plaintiffs do not attempt to make one — that Cera and Miller are subject to the general personal jurisdiction of courts in the District of Columbia, as they are not "at home" in the District. See Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014). Consequently, only the question of specific jurisdiction is at issue here. "Specific jurisdiction . . . depends on an 'affiliatio[n] between the forum and the underlying controversy.'" Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846,

2851 (2011) (quoting Arthur T. von Mehren & Donald T. Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 HARV. L. REV. 1121, 1136 (1966)) (alteration in original).  The plaintiffs rely on two sources of statutory authority to ground the exercise of specific personal jurisdiction over Cera and Miller.  First, the plaintiffs invoke Section 202 of the Uniform Trust Code, codified at Section 19-1302.02 of the District of Columbia Code.  Second, they point to the District's long-arm statute, D.C. CODE § 13-423, and, specifically, its provision concerning defendants who have an interest in real property located in the District of Columbia.  See Pls.' Opp. to Cera MTD at 4 (citing D.C. CODE § 13-423(a)(5)).  The plaintiffs also make passing reference to the "transacting business" clause of the long-arm statute.  See id. (citing D.C. CODE § 13-423(a)(1)).  Because the Court concludes that personal jurisdiction may be exercised under Section 202 of the Uniform Trust Code, as codified in the D.C. Code, it need not address any arguments relating to the long-arm statute.

### i. Section 202 of the Uniform Trust Code

Section 202 of the Uniform Trust Code expressly provides:  "[b]y accepting the trusteeship of a trust having its principal place of administration in the District of Columbia . . . the trustee submits personally to the jurisdiction of the courts of the District of Columbia regarding any matter involving the trust."  D.C. CODE § 19-1302.02(a).  The Code also provides that "terms of a trust designating the principal place of administration are valid and controlling if:  (1) [a] trustee's principal place of business is located in or a trustee is a resident of the designated jurisdiction; or (2) [a]ll or part of the administration occurs in the designated jurisdiction."  D.C. CODE § 19-1301.08(a).

The language of this statute is both clear and broad; if it applies, then a trustee is subject to the jurisdiction of the District of Columbia courts "regarding *any matter* involving the

trust." D.C. CODE § 19-1302.02(a) (emphasis added).  This language would seem to encompass the plaintiffs' claim for a court order as well as their claims alleging a conspiracy to extract funds from the Trust and alleging that Cera and Miller violated fiduciary duties to the plaintiffs.  The question, then, is whether Cera and Miller "accept[ed] the trusteeship[s] of a trust having its principal place of administration in the District of Columbia."  See id.

The plaintiffs contend that the Elberta Douglass Living Trust establishes its situs in the District of Columbia, and that the Trust inevitably must be administered here because the Trust owns real property in the District of Columbia and is the beneficiary of a will probated in the Superior Court of the District of Columbia.  See Pls.' Opp. to Cera MTD at 2-3.  Cera and Miller, for their part, offer no response to the plaintiffs' invocation of D.C. CODE § 19-1302.02(a).  See Cera MTD Reply at 4 (only addressing the long-arm statute).  Presumably they would argue — as co-defendant Schmidt does elsewhere, see Schmidt Opp. to TRO and PI at 12 — that the Trust's principal place of administration now lies in Florida rather than in the District of Columbia.

Although Section 202 of the Uniform Trust Code has been adopted by at least fifteen states as well as the District of Columbia, there is a dearth of case law analyzing this provision, and little guidance regarding the scenario posed by this case.  Nevertheless, the Court concludes that because the Trust's principal place of administration clearly lay in the District of Columbia at the time Cera and Miller accepted positions as purported trustees of the Trust — and as the plaintiffs' claims stem from those acts of acceptance, rather than from any conduct taken subsequent to those acts — D.C. CODE § 19-1302.02 provides a statutory basis for this Court's assertion of personal jurisdiction over Cera and Miller.  Cf. Emberton v. Rutt, No. CIV 07-1200 JB/RLP, 2008 WL 4093714, at *8-9 (D.N.M. Mar. 31, 2008) (co-trustee submitted to jurisdiction

of New Mexico courts under Section 202 of the Uniform Trust Code by accepting position as co-trustee of New Mexico trust, and court did not lose jurisdiction once administration of trust was later moved to Texas).

The Trust itself does not explicitly state that the District of Columbia is its situs; although the plaintiffs cite Trust Section 13-1307(b) to say that it does, the Court has not found any such subsection in the Trust.  But the Trust does feature two provisions that, when read together, appear to indicate settlor Elberta Douglass' intent that the District be its principal place of administration.  Section 13.07(d) provides that the Trust "is governed, construed, and administered according to the laws of the District of Columbia . . . unless the situs of administration is changed as provided in Section 13.05."  And although the cross-referenced section distinguishes between actions taken to change the governing law, on the one hand, and to change the situs, on the other, see Trust Section 13.05 — which suggests that there need not necessarily be a linkage between the two — there is no indication that Ms. Douglass intended for any location other than the District of Columbia to be the principal place of her Trust's administration, particularly given that Ms. Douglass herself was the first trustee and was a D.C. resident.  Cf. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 267 cmt. c (1971) (acknowledging presumption that settlor intends for trust to be administered in state of his or her domicile, as well as that in the absence of provision establishing that trust is to be administered in a particular state, "it is reasonable to infer in most situations that the . . . settlor expected the trustee to administer the trust at his or its place of business or domicil[e]").  Ms. Schmidt's amendment to the Trust providing for a change to a Florida situs only seems to confirm that, prior to this purported change, the Trust was administered in the District of Columbia.

Moreover, as noted, Elberta Douglass was the Trust's first trustee, and it is undisputed that she resided in the District of Columbia.  See D.C. CODE § 19-1301.08(a) ("[T]erms of a trust designating the principal place of administration are valid and controlling if . . . a trustee is a resident of the designated jurisdiction . . . .").  Upon Ms. Douglass' death, plaintiffs Katrina Queen and Kitt Haston became the trustees, and Ms. Haston — like her mother, Ms. Douglass — resided in the District of Columbia.  Further, the actions taken by Janet Schmidt to change the situs of the Trust to Florida — including executing an amendment to the Trust, see Schmidt Opp. to TRO and PI at 7, 12, as well as appointing Cera and Miller as the purported trustees — are alleged by the plaintiffs to be invalid.  Because the Court does not here decide the merits of that contention, it will not consider the purported change to the Trust's situs in determining the question of personal jurisdiction.  Nor need the Court do so, as the plaintiffs' claims do not stem from any actions taken by Cera and Miller subsequent to their acceptance of the trusteeships.  Consequently, D.C. CODE § 19-1302.02 provides a statutory basis for this Court's assertion of jurisdiction over Cera and Miller.

### ii.  Minimum Contacts

The Court further determines that exercising jurisdiction over Mr. Cera and Ms. Miller would not offend due process.  "[T]he Due Process Clause limits the authority of courts to exercise personal jurisdiction over nonresident defendants; personal jurisdiction exists in a given forum only if the defendant has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  GSS Group Ltd. v. Nat'l Port Authority, 774 F. Supp. 2d 134, 137 (D.D.C. 2011) (quoting Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 95 (D.C. Cir. 2002)) (alteration in original).  "Jurisdiction is proper . . . where the contacts proximately result from actions by the

defendant *himself* that create a 'substantial connection' with the forum State." Burger King

Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting McGee v. Int'l Life Insurance Co., 355

U.S. 220, 223 (1957)).  "[T]he defendant's conduct and connection with the forum State [must

be] such that he should reasonably anticipate being haled into court there." Id. at 474 (quoting

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

     Mr. Cera and Ms. Miller voluntarily assumed their appointments as the trustees of

the Elberta Douglass Living Trust.  See Cera MTD at 2.  To be sure, they did so while living in

the state of Florida.  But the Trust itself had, at least up until that point, clearly been centered in

the District of Columbia, as they undoubtedly knew.  As noted already, Ms. Douglass, the

Trust's settlor and its original trustee, see Trust Art. 1, was a D.C. resident.  The Trust originally

provided that it would be governed by the laws of the District of Columbia, and the validity of

Ms. Schmidt's subsequent amendments — changing both situs and governing law to Florida —

is one of the core points of dispute between the parties in this case.  Further, the Trust owns at

least one piece of real property in the District.  See Trust Section 6.05.  Moreover, the Trust is

the sole beneficiary of the Estate of Elberta Douglass, which is or was being probated in the

Superior Court of the District of Columbia.  See Verified Complaint [Ex. 2 to Dkt. No. 12 in

Queen II].  And finally, at the time the complaint in Queen I was filed, one of the plaintiffs who

alleged having been wrongfully divested of her position as trustee — Kitt Haston — resided in

the District.

     The Court therefore concludes that Cera and Miller could "reasonably anticipate

being haled into court" here in connection with a lawsuit, such as this one, aimed at determining

whether their appointments as trustees were lawful, as well as whether, by accepting the

appointments, Cera and Miller thereby participated in a conspiracy with Schmidt to steal the trust's assets or otherwise violated fiduciary duties to the plaintiffs.

### b.  Service of Process

The defendants also argue that the plaintiffs' service of process upon them was ineffective.  Specifically, Cera and Miller contend that the plaintiffs served them with summonses that had been issued by the Superior Court of the District of Columbia prior to removal of the case.  They argue that those summonses therefore were void at the time they were served, following removal of the case to this Court.  <u>See</u> Cera MTD at 11; Cera Supp. Memo. at 3-4.

Service of process following the removal of a case to federal court is governed by 28 U.S.C. § 1448, which provides:

> In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.

Cera and Miller contend that, in this case, the statute would require that "service of process . . . be accomplished according to Federal procedures," namely by service of a summons issued by the federal court.  Cera Supp. Memo. at 3.  The plaintiffs respond that a "literal reading of the statute demonstrates that, in the situation of the non-served defendant as of the date of removal, the plaintiff has two options:  either to continue efforts to serve that defendant with the state-issued process or to apply for new process from the U.S. District Court."  Pls.' Supp. Memo. at 2.

The question of statutory interpretation concerns the meaning of the words in Section 1448's key final clause: "*such process or service may be completed* or new process issued in the same manner as in cases originally filed in such district court." Cera and Miller argue that the emphasized language pertains only to situations in which the state court summons "has previously been served upon a defendant and such service was somehow deficient or not perfected prior to removal of the case." Cera Supp. Reply at 4. Accordingly, they argue that because in this case the plaintiffs never even attempted service upon them prior to removal of the action from the Superior Court, Section 1448's provision allowing the completion of "such process or service" is inapplicable. See id. 4-7. The defendants' reading of the statute is wrong.

Section 1448 identifies three situations that may unfold prior to removal: (1) "any one or more of the defendants has not been served with process"; or (2) "the service has not been perfected prior to removal"; or (3) the "process served proves to be defective." 28 U.S.C. § 1448. Each of these three separate scenarios is separated by the word "or"; and the set of them is followed by the provision that "such process or service may be completed." See id. Thus, in any one of those three situations, a plaintiff may "complete" service of state court process. The statute's language bears no indication that the provision for completion applies only to scenarios (2) and (3). That is, there is nothing in the text to suggest that the provision allowing for the "complet[ion]" of "such process or service" does not also apply to situations "in which any one or more of the defendants has not been served with process." See id.

As another district court has persuasively explained:

> [T]he statute states that in all removed cases in which any one or more of the defendants has not been served with process, '*such process or service*,' which can only be referring to process issued by the state court, 'may be *completed* or new process issued,' thus clearly providing two alternatives. If in all cases in which a defendant was not served prior to removal, service could only be

> validly accomplished post-removal by having 'new process issued'
> by the federal court, then the phrase 'may be completed' would be
> meaningless.

Minter v. Showcase Systems, Inc., 641 F. Supp. 2d 597, 601-02 (S.D. Miss. 2009); see also

Schmude v. Sheahan, 214 F.R.D. 487, 490 (N.D. Ill. 2003) ("[F]or purposes of § 1448, service of

process commence[s] on . . . the day the [state court] summons[es] were issued.").  Thus, there is

no reason why "such process" may not be "completed" after removal to federal court, even if

prior to removal the plaintiffs had yet to attempt service of the state court process upon the

defendants.  The Court therefore concludes that it may exercise personal jurisdiction over

defendants Mark Cera and Bonnie Miller.[10]

### C.  Cera's and Miller's Other Arguments for Dismissal

Mr. Cera and Ms. Miller also move for dismissal of the plaintiffs' complaint

under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b)(6) allows dismissal of a

complaint if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P.

12(b)(6).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of

the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice

of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly,

---

[10]     Cera and Miller rely on the Ninth Circuit's decision in Beecher v. Wallace, 381 F.2d 372 (9th Cir. 1967), which reached the opposite conclusion:  "[W]here a defendant has not been served at all with state process prior to removal . . . the federal court cannot 'complete' the state process by permitting it to be served after removal; rather the federal court must issue new process pursuant to Rule 4 of the Federal Rules of Civil Procedure."  Id. at 373.  For the reasons explained above, this Court disagrees with the Ninth Circuit's reading of Section 1448.  Indeed, a subsequent panel of that court has called into doubt the soundness of the Beecher court's reading of the statutory text.  See Richards v. Harper, 864 F.2d 85, 87 (9th Cir. 1988) ("Although § 1448 appears to support [the argument that the district court may complete the service of process initiated in state court,] our precedent [i.e., Beecher] holds otherwise.").  And while a fair number of district courts have followed Beecher, perhaps a greater number have rejected its approach.  See Minter v. Showcase Systems, Inc., 641 F. Supp. 2d at 599-601 (collecting cases).  This Court joins with the latter group of federal courts.

550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Although

"detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss,

the facts alleged must be "enough to raise a right to relief above the speculative level."  Id.  The

complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that

is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic

Corp. v. Twombly, 550 U.S. at 570) (internal quotations omitted).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  In re Interbank Funding Corp.

Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. at 678).

> Mr. Cera and Ms. Miller argue that the plaintiffs' complaint fails to include any

factual allegations of wrongdoing committed by them.  These two defendants are identified by

name at only two points in the complaint.  First, the plaintiffs state the simple fact that Janet

Schmidt appointed Cera and Miller as the purported trustees of the Elberta Douglass Living

Trust.  See Queen I Compl. ¶ 28.  Second, based on this conduct, the plaintiffs accuse Cera and

Miller, together with Schmidt, of "engaging in a plan to extract funds and/or property from the

Trust" and "violating their fiduciary duties to the Plaintiffs not to interfere with the Plaintiffs as

Trustees in administering the Trust and the decedent's estate . . . in order to reap fees and [to]

loot the Trust and Estate of property."  Id. ¶ 51.  The plaintiffs offer no legal or factual basis,

however, for a claim that Cera and Miller owed them a fiduciary duty not to interfere with the

plaintiffs' ability to administer the Trust.  With respect to the plaintiffs' attempt to assert civil

conspiracy based upon conversion or some similar underlying tort, the claim is conclusory and

not supported by allegations of corrupt intent or specific conduct committed either by Cera or

Miller, nor an allegation of injury.  See Busby v. Capital One, N.A., 772 F. Supp. 2d 268, 278

(D.D.C. 2011).  It appears possible, however, based on the full context of the complaint and the

nature of Schmidt's alleged conduct, that the plaintiffs could "adequately re-plead" this claim

with respect to Cera and Miller.  Findlay v. CitiMortgage, Inc., 813 F. Supp. 2d 108, 123 n.5

(D.D.C. 2011); see Nat'l ATM Council, Inc. v. Visa Inc., 922 F. Supp. 2d 73, 96 (D.D.C. 2013)

("The Court has not concluded that plaintiffs could never make factual allegations to support

their claims; it simply rules that plaintiffs have not done so here.").  For all of these reasons, to

the extent the plaintiffs seek to impose tort liability on Mr. Cera and Ms. Miller, those claims

must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state

a claim upon which relief can be granted, but the Court will dismiss the plaintiffs' claim of civil

conspiracy without prejudice.[11]

The Court would not, in any event, dismiss Cera and Miller as defendants from

this action because they are necessary parties to the lawsuit, given the plaintiffs' request for a

court order requiring Cera and Miller to relinquish their purported positions as trustees of the

Trust, so that the plaintiffs can reclaim those positions.  See Queen I Compl. ¶ 47.  Based on this

claim for relief, the Court concludes that Mr. Cera and Ms. Miller should remain joined in this

action as necessary parties, even apart from the plaintiffs' attempt to assert tort claims against

those defendants.  See FED. R. CIV. P. 19(a)(1).[12]

---

[11]      Cera and Miller also contend that the plaintiffs' claims against them should be
dismissed for lack of Article III standing.  See Cera MTD at 4-6.  This argument really is a
restatement of the contention that the complaint alleges no tortious conduct on either of their
parts.  The two defendants also move to dismiss for improper venue, arguing that this dispute
should be resolved in Florida rather than in the District of Columbia.  Id. at 13-14.  But the
central allegations of tortious conduct committed by Janet Schmidt occurred in and near the
District of Columbia, with respect to a Trust centered in the District.  Accordingly, the Court will
not dismiss the case on this ground.

[12]      Rule 19 of the Federal Rules of Civil Procedure provides, in relevant part:  "A
person who is subject to service of process and whose joinder will not deprive the court of
subject-matter jurisdiction must be joined as a party if . . . in that person's absence, the court

### III. QUEEN II[13]

On March 25, 2011, Mark Cera and Bonnie Miller — acting as trustees of the Elberta Douglass Living Trust — filed an action in the Superior Court of the District of Columbia, Probate Division, against defendants Katrina Queen, Kitt Haston, and William Queen ("the Queen I plaintiffs"), among several others.  Cera and Miller asserted three claims relating to the Estate of Elberta Douglass:  for revocation of probate; for removal of the Estate's personal representative; and for an accounting of the Estate.  See Schmidt Remand Opp. at 1; id. Ex. 2 (first two pages of Verified Complaint filed by Cera and Miller).[14]

---

cannot accord complete relief among existing parties; or . . . that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest . . . ." FED. R. CIV. P. 19(a)(1).  "Rule 19 [does] not . . . require a cause of action between a plaintiff and a party sought to be joined under the rule."  EEOC v. Peabody Western Coal Co., 400 F.3d 774, 781-82 (9th Cir. 2005); see also id. at 782 (observing that D.C. Circuit's suggestion to the contrary, in Davenport v. Int'l Brotherhood of Teamsters, AFL-CIO, 166 F.3d 356, 366 (D.C. Cir. 1999), was dicta).

[13]     The papers considered in connection with the motions pending in Queen II include:  Schmidt's amended notice of removal ("Am. Notice of Removal") [Dkt. No. 10]; plaintiffs' Third-Party Complaint [Dkt. No. 10-1]; plaintiffs' motion to remand ("Mot. to Remand") [Dkt. No. 7]; plaintiffs' motion to quash the amended notice of removal ("Pls.' Mot. to Quash") [Dkt. No. 11]; Schmidt's opposition to plaintiffs' motion to remand ("Schmidt Remand Opp.") [Dkt. No. 12]; Schmidt's opposition to plaintiffs' motion to quash the amended notice of removal ("Schmidt Removal Quash Opp.") [Dkt. No. 13]; Schmidt's motion to quash service and to dismiss duplicative complaint ("Schmidt Mot. to Quash and MTD") [Dkt. No. 19]; plaintiffs' reply to Schmidt's opposition to motion to remand ("Pls.' Remand Reply") [Dkt. No. 15]; Schmidt's motion to strike plaintiffs' reply to Schmidt's opposition to motion to remand ("Schmidt Mot. to Strike") [Dkt. No. 17]; plaintiffs' opposition to motion to quash service and to dismiss duplicative complaint ("Pls.' Opp. to Mot. to Quash and MTD") [Dkt. No. 18]; plaintiffs' opposition to Schmidt's motion to strike ("Pls.' Opp. to Mot. to Strike") [Dkt. No. 21]; and Schmidt's reply to plaintiffs' opposition to motion to quash service and to dismiss duplicative complaint ("Schmidt Quash Reply") [Dkt. No. 24].

[14]     The Queen I plaintiffs also assert that Cera's and Miller's underlying action sought to have them removed as the trustees of the Elberta Douglass Living Trust.  See Pls.' Mot. to Quash at 1.  Strangely enough, no party has submitted a complete copy of the original complaint filed by Cera and Miller in the Superior Court

Having been sued by Cera and Miller, the <u>Queen I</u> plaintiffs then filed a "Third-Party Complaint" in Superior Court solely against Janet Schmidt, drawing her into the new litigation.  The Third-Party Complaint is basically identical to the plaintiffs' complaint in <u>Queen I</u>.  Days after this Third-Party Complaint was filed, Ms. Schmidt filed a notice of removal in this Court.  The <u>Queen I</u> plaintiffs then filed a motion to remand, arguing that Ms. Schmidt is a third-party defendant who has no right to remove a case from state to federal court.  <u>See</u> Mot. to Remand at 3.  Ms. Schmidt responds that the <u>Queen I</u> plaintiffs' "Third-Party Complaint" really is not a third-party complaint at all, but instead is a "separate and independent action" that should have been filed as such.  <u>See</u> Schmidt Remand Opp. at 2-13.

Ms. Schmidt first contends that she removed only the Third-Party Complaint, and not the entire Superior Court case.  <u>See</u> Am. Notice of Removal ¶ 5; Schmidt Remand Opp. at 2.  She cites no rule of procedure, however, permitting such partial removal, and the Court knows of none that exists.  <u>See</u> <u>Wood v. Crane Co.</u>, 764 F.3d 316, 320 (4th Cir. 2014) (recognizing the "basic proposition[] that parties remove cases, not claims").[15]  Further, as Schmidt acknowledges, the Superior Court action was closed — in its entirety — on November 29, 2011.  <u>See</u> Schmidt Mot. to Quash and MTD at 2; <u>see also</u> 28 U.S.C. § 1446(d) ("Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State

---

[15]     Contrary to Ms. Schmidt's contention, 28 U.S.C. § 1441(c) does not provide for the removal of separate and independent claims "so long as the unrelated underlying complaint" remains in state court.  <u>See</u> Am. Notice of Removal ¶ 5.  Rather, Section 1441(c) provides that where a lawsuit in state court includes both federal claims and state law claims falling outside of federal jurisdiction, "the *entire action* may be removed if the action would be removable without the inclusion of the [non-removable] claim," after which the federal district court "shall sever" the non-removable claims and "remand the severed claims to the State court from which the action was removed."  28 U.S.C. § 1441(c) (emphasis added).  Moreover, as explained <u>infra</u> at 34 n.18, Section 1441(c) has no application to this case because Ms. Schmidt has invoked this Court's diversity jurisdiction rather than its federal question jurisdiction.

court, which shall effect the removal *and the State court shall proceed no further unless and until the case is remanded*.") (emphasis added).  The entire case, therefore, is presently before this Court, even though Cera and Miller have not appeared to assert an interest in the claims they had filed against the plaintiffs through their underlying complaint.[16]

Ms. Schmidt acknowledges that, in general, "third-party defendants brought into the state action by the original defendant [may not] exercise the right to remove claims to the federal court."  14C CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. JURIS. § 3730, at 432-33 (4th ed. 2009).  This rule stems from federal courts' narrow construction of the word "defendant" in the removal statute, 28 U.S.C. § 1441(a).  See First Nat'l Bank of Pulaski v. Curry, 301 F.3d 456, 461-63 (6th Cir. 2002) (third-party defendants are not defendants for purposes of removal); 14C WRIGHT ET AL. § 3730, at 432 (the right to remove is limited to "true" defendants).  But Schmidt contends that this bar has no application here because the Queen I plaintiffs' "Third-Party Complaint" represents an illegitimate attempt at third-party practice, and she therefore has been mischaracterized as a "third-party defendant."  On this point, Schmidt is correct, but it is a hollow victory.

---

[16]      As an initial matter, the Court concludes that it lacks subject matter jurisdiction to adjudicate Cera's and Miller's underlying claims for revocation of probate; for removal of the personal representative of Elberta Douglass' Estate; and for an accounting of the Estate.  These claims lie squarely within the probate exception to federal jurisdiction.  See Marshall v. Marshall, 547 U.S. at 311-12.  In circumstances where a case presents both a claim that falls within the probate exception and a claim that does not, at least one district court has severed the claims and remanded only the claim over which jurisdiction could not be exercised.  See Newcomb v. Sweeney, Civil Action No. 3:11cv399(VLB), 2013 WL 1774651, at *3-5 (D. Conn. Apr. 25, 2013).  This Court has no occasion to consider the propriety of such an approach, however, because, for the reasons explained below, it concludes that Ms. Schmidt had no right to remove the action from Superior Court at all, as she cannot be considered a "defendant" within the meaning given to that term in the removal statute.

The plaintiffs argue that their Third-Party Complaint also presents claims that are barred by the probate exception.  See Pls.' Remand Reply.  Because their claims in this action are the same as those asserted in Queen I, the Court rejects this argument.  See supra at 12-14.

Under Rule 14 of the Federal Rules of Civil Procedure (which is identical to Rule 14 of the Superior Court Rules), "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." FED. R. CIV. P. 14(a)(1).  In this case, the underlying action brought by Cera and Miller as purported trustees against the <u>Queen I</u> plaintiffs seeks remedies including the removal of Katrina Queen as personal representative of the Estate of Elberta Douglass, as well as an accounting of the Estate and revocation of probate.  But the Third-Party Complaint brought by Queen, Haston, and Queen alleges wrongdoing on Ms. Schmidt's part in relation to the amendment of the Elberta Douglass Living Trust and the removal of the <u>Queen I</u> plaintiffs as trustees.  It asserts claims against Schmidt for the unauthorized practice of law, violation of professional ethical duties, and violation of fiduciary duties.  The purported Third-Party Complaint against Schmidt does not pertain to any liability that Schmidt may bear for the claims alleged against the <u>Queen I</u> plaintiffs by Cera and Miller.  It therefore follows that Ms. Schmidt is not a third-party defendant under Rule 14 of the Federal Rules of Civil Procedure.

Schmidt would be better labeled an additional counterclaim defendant who might be permissively joined to the underlying action under Rules 13 and 20 of the Federal Rules of Civil Procedure.  <u>See</u> FED. R. CIV. P. 13(h), 20(a)(2); <u>see also</u> <u>Deutsche Bank Nat'l Trust Co. v. Baxter</u>, 969 F. Supp. 2d 1337, 1341-42 (N.D. Ala. 2013).  Unfortunately for Ms. Schmidt, however, counterclaim defendants — like third-party defendants — also are not typically considered to be "defendants" within the meaning of the removal statute, and, as such, they cannot disturb a plaintiff's choice of forum through removal.  <u>See</u> <u>In re Mortgage Electronic Registration Systems, Inc.</u>, 680 F.3d 849, 853 (6th Cir. 2012) ("Under [Section 1441(a)], a counterclaim or third-party defendant is not a 'defendant' who may remove [an] action to federal

court."); <u>Palisades Collections LLC v. Shorts</u>, 552 F.3d 327, 332-34 (4th Cir. 2008).  The Court

therefore concludes that Ms. Schmidt lacked the right to remove <u>Queen II</u> from the Superior

Court to this Court.  Accordingly, the Court must remand this case to that forum.

        Schmidt further contends, however, that the <u>Queen I</u> plaintiffs have "fraudulently

joined" their claims against her to the underlying action brought by Cera and Miller (<u>Queen II</u>),

and that the Court should not countenance their effort to get the case back to the Superior Court

to litigate the same claims that already were removed to federal court in <u>Queen I</u>.  <u>See</u> Schmidt

Remand Opp. at 8-9.  Even if Schmidt is right, her remedy was — and still is — in the Superior

Court, not here.  For "[i]f the joinder at issue is patently improper under state law, the

[counterclaim] defendant should easily and quickly succeed in having the removable claim

severed, at which point the case against the [counterclaim] defendant may be properly removed."

<u>Central Ohio Gaming Ventures, LLC v. Goodman</u>, No. 2:11-cv-223, 2011 WL 1981185, at *9

(S.D. Ohio May 20, 2011); <u>see</u> <u>In re Prempro Products Liability Litig.</u>, 591 F.3d 613, 624 n.8

(8th Cir. 2010) ("Considering the uncertainty surrounding the propriety of the joinder of

plaintiffs' claims, the preferable course of action may have been for defendants to challenge the

misjoinder in state court before it sought removal.").  Because Ms. Schmidt could have filed a

motion in the Superior Court requesting severance of the <u>Queen I</u> plaintiffs' Third-Party

Complaint from the underlying action — but instead chose to attempt to remove the action to this

Court despite her status as an additional counterclaim defendant — remand is appropriate.  After

remand, Ms. Schmidt will be at liberty to move for severance in the Superior Court and, if that

motion is granted, to again attempt removal of the severed Third-Party Complaint.[17]

---

[17]    Once back in the Superior Court, Ms. Schmidt also will be free to assert her
argument that the Third-Party Complaint was misjoined to the underlying action because the
<u>Queen I</u> plaintiffs there were sued as individuals, but the Third-Party Complaint was filed by the

For the very same reason, Ms. Schmidt's invocation of the so-called "Riegel exception" is misplaced.  See Schmidt Remand Opp. at 11-13 (citing Central of Georgia Railway Co. v. Riegel Textile Corp., 426 F.2d 935 (5th Cir. 1970)).  In Riegel, the Fifth Circuit held that the general rule barring third-party defendants from removing cases did not apply where the "third party controversy [] has been severed from the original action."  See Central of Georgia Railway Co. v. Riegel Textile Corp., 426 F.2d at 938.  This is because a major concern underlying the narrow construction of "defendant" in the removal statute — "that the filing of a third party action should not be allowed to defeat the plaintiff's choice of forum," in which case "removal . . . 'is too much akin to the tail wagging the dog'" — "has no application where by judicial surgery tail and dog have been separated."  Id. (quoting 1A MOORE, FEDERAL PRACTICE § 0.167(10) at 1052 (1961)) (citations omitted).  In the present case, by contrast, Ms. Schmidt removed the entire action rather than first filing a motion in the Superior Court seeking to sever the Third-Party Complaint from the underlying action.  Had she done so and succeeded, the rationale of Riegel would have permitted the removal of the Queen I plaintiffs' complaint against her.  But that rationale is not applicable to the circumstances presented here.[18]

In sum, the Court concludes that Ms. Schmidt was not entitled to remove Queen II from the Superior Court, and it therefore will remand the case to that forum.  The Court also will deny Ms. Schmidt's request that it sanction plaintiffs' counsel based on his serving process upon

---

Queen I plaintiffs in their capacities as the purported trustees of the Trust.  See Schmidt Remand Opp. at 3-4.

[18]     Schmidt also argues that removal of a third-party claim that is "separate and independent" from the underlying claim is proper under 28 U.S.C. § 1441(c).  See Schmidt Remand Opp. at 10-11 (citing Carl Heck Engineers Inc. v. LaFourche Parish Police Jury, 622 F.2d 122, 135 (5th Cir. 1980)).  Because Schmidt's removal of this case was predicated on diversity of citizenship, rather than federal question jurisdiction, Section 1441(c) has no application.

Schmidt using the summons issued by the Superior Court.  As explained <u>supra</u> at 24-26, the

completion of service issued by a state court is permitted under the plain language of 28 U.S.C.

§ 1448.[19]

## IV.  CONCLUSION

For the foregoing reasons, the Court rejects the plaintiffs' request to remand

<u>Queen I</u> to the Superior Court.  Because the Court also finds that plaintiffs' service upon

defendant Janet Schmidt in <u>Queen I</u> was defective, it will grant the plaintiffs a further 120 days

within which to effect service.  In addition, the Court will direct plaintiffs' counsel to show cause

why he should not be sanctioned for misrepresenting the nature and authenticity of evidence

proffered to demonstrate Janet Schmidt's citizenship.  As to <u>Queen I</u>, the Court also concludes

that it may exercise personal jurisdiction over defendants Mark Cera and Bonnie Miller and that

those defendants were properly served.  To the extent the plaintiffs seek to hold Cera and Miller

liable for any tortious conduct, however, the plaintiffs fail to state a claim for relief against those

two defendants, although the Court's dismissal of their claim for civil conspiracy is without

prejudice to their filing an amended complaint that re-pleads this claim.  Moreover, because the

plaintiffs also seek a court order that would require Cera and Miller to step down as trustees, the

Court concludes that these defendants are necessary parties with respect to that claim.

---

[19]     The Court further notes that because it is remanding this action, Ms. Schmidt's argument concerning claim splitting has no force.  <u>See</u> Schmidt Mot. to Quash and MTD at 4-6. Claim splitting occurs when a "plaintiff seeks 'to maintain two actions on the same subject in the same court, against the same defendant at the same time.'"  <u>Clayton v. Dist. of Columbia</u>, 36 F. Supp. 3d 91, 94 (D.D.C. 2014) (quoting <u>Katz v. Gerardi</u>, 655 F.3d 1212, 1217 (10th Cir. 2011)). There is, however, no bar to the prosecution of parallel actions in federal and state courts.  <u>See</u> <u>Handy v. Shaw, Bransford, Veilleux & Roth</u>, 325 F.3d 346, 349-53 (D.C. Cir. 2003).

As for <u>Queen II</u>, the Court will remand that case to the Superior Court of the District of Columbia.  A separate Order in each of these matters will issue this same day.

SO ORDERED.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  September 3, 2015